Filed 9/4/20  In re E.A. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re E.A., a Person Coming Under the Juvenile Court Law. | B301118 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 17CCJP00259A) |
| Plaintiff and Respondent, | |
| v. | |
| M.P., | |
| Defendant and Appellant; | |
| LUIS A., | |
| Objector and Appellant; | |
| E.A., a Minor, etc., | |
| Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County, Emma Castro, Commissioner.  M.P. appeal dismissed. Affirmed.

Pamela Deavours, under appointment by the Court of Appeal, for Defendant and Appellant.

Jesse McGowan, under appointment by the Court of Appeal, for Objector and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Marissa Coffey, under appointment by the Court of Appeal, for Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother M.P. and father Luis A. appeal the order terminating their parental rights to their daughter, E.A. The other children involved in this dependency case are not at issue in this appeal. Father also appeals orders made at the Welfare and Institutions Code section 366.21[1] review hearing, where the court found the Los Angeles County Department of Children and Family Services had provided father with reasonable reunification services and it would be detrimental to place E.A. with father, and set a section 366.26 hearing to select and implement a permanent plan for E.A.[2]

Mother's appointed counsel filed a brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 (*Phoenix H.*), and mother did not file a supplemental brief.

We affirm all the orders and dismiss mother's appeal.

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]    The Department concedes that father may challenge orders preceding the order terminating parental rights, which ordinarily must be challenged by writ petition, because father's statutory writ advisement was sent to the wrong address. (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 722.)

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, mother's four children, E.A. (then 10), L.A. (then 8), J.P. (then 2), and T.P. (then 11 months), came to the attention of the Department after J.P. suffered life-threatening injuries. J.P.'s injuries were the result of "severe violent acts" which likely occurred over a period of weeks or months.

Appellant Luis A. is the presumed father of the two older children, E.A. and L.A. At the time of the detention report, father's whereabouts were unknown, but it was believed he was residing in Mexico.

The Department filed a dependency petition, and later a first amended petition, making allegations under subdivisions (a), (b), (e), and (j) of section 300 based on J.P.'s extensive injuries. All the children were detained. E.A. was placed in the same foster home as her younger sister, T.P. L.A. and J.P. were placed with other caregivers.

The Department contacted father in late September 2017 and informed him that E.A. and L.A. were detained in foster care due to suspected abuse of their younger sibling. Father was living with his mother and sister in Mexico, where he works in construction. Father told the social worker that when he and mother were together, she hit their children with a shoe and used methamphetamine and alcohol in their presence. He knew the children had been detained before based on mother's substance abuse.

Father had been deported to Mexico in 2011. His criminal history included arrests for falsifying citizenship documents, forging an official seal, driving under the influence, contempt, and criminal conspiracy. He served time in prison related to the forgery and falsifying documents charges before he was deported.

Father told the social worker he loved his children and wanted to reunify with them.

According to mother, father resided with the family for two years following E.A.'s birth. He last saw E.A. and L.A. in 2010.

In advance of the jurisdictional hearing, the juvenile court ordered that father have once-weekly monitored Skype or phone calls with E.A. and L.A., and that the Department evaluate his home for placement of the children through the Mexican agency, DIF.

At the March 9, 2018 jurisdiction/disposition hearing, the allegations of the petition were sustained. The children were removed from parental custody, and the court ordered reunification services for mother and the father of her two younger children.

As to appellant Luis A., the court ordered that he participate in conjoint counseling via Skype, and that he have phone or Skype visits with the children. Father's counsel confirmed that father had access to Skype. Father's counsel clarified that father is "noncustodial, nonoffending, and at this time, not seeking custody," and requested that the court not make a detriment finding under section 361.2. When the court inquired of the Department, the Department did not object to the court foregoing a detriment finding at that time. Father's counsel agreed that removal orders could be made as to father, and the court removed E.A. and L.A. from father under section 361, subdivision (c).

Father told the Department he was committed to having his children placed with him. He admitted he had not contacted the children in the seven years following his deportation. He blamed mother for often changing her phone number, and not allowing him to speak with the children. He said he spoke with family members to get updates about the children.

4

The DIF assessment of father's home was "positive," finding father had an adequate home and sufficient income to care for his children. According to the report, paternal grandmother and aunt would care for the children while father worked.

E.A. did not want to be placed with father because she did not even remember him. She was thriving in her foster placement and well bonded to her caregivers. She was also bonded with her siblings. E.A. was struggling in school, and had an IEP to address her academic needs.

L.A. also did not want to live with father because father was a stranger.

The Department in its October 2018 status review report said father was "open to conjoint counseling," but that E.A. refused to speak with him on the phone. Father had only been able to speak with E.A. and L.A. a few times, as they did not want to speak with him. Despite that, the Department recommended that E.A. and L.A. be placed with father in Mexico.

On October 15, 2018, the court appointed an Evidence Code section 730 expert to evaluate the bond between the children, parents, and siblings, and to address whether E.A. and L.A. should be placed with father in Mexico.

The Department's December 2018 status review report noted that father had still not engaged in conjoint counseling with the children, and that E.A. refused to speak with father on the phone.

To facilitate visitation for father, the Department established a phone visitation schedule. He was to call E.A. and L.A. on Mondays, Thursdays, and Fridays, between 4:00 and 6:00 p.m. However, father almost never called.

The Evidence Code section 730 evaluation took place in late November 2018. In his December 1, 2018 report, Dr. Armando de Armas reported that he did not call father, as he was not trained to

5

conduct evaluations over the phone. The Department gave father the doctor's phone number and told father to call the doctor, but father never called him.

E.A. told Dr. de Armas she did not want to live with father. She believed he did not care about her because he had not contacted her in years. E.A. wanted to stay with her foster parents. Dr. de Armas noted many loving interactions between the siblings. E.A. and L.A. were particularly well bonded.

Regarding placement of E.A. and L.A. with father, Dr. de Armas concluded "[t]here is insufficient information about how these children interact with father . . . to provide an informed psychological opinion about reunification. Since these children have not even had visitation with father . . . and have had no contact with him for many years, it seems quite premature to be considering placement with him."

On December 4, 2018, a Department social worker asked father if he had visited with the children by phone. He said he did not have Skype or FaceTime on his phone and that he lives in a remote area with poor phone access. Father again agreed to a phone schedule where he would call the children three days a week. However, E.A.'s caregiver later reported that father had not called even once in over a month.

On January 9, 2019, E.A. reported she was having a hard time sleeping and concentrating because she was so worried about living with father.

Testimony for the contested section 366.21 review hearing was taken over several days in January and February 2019.

E.A. testified to her apprehension that the court would send her to live with father. E.A. had not seen father in seven or eight years, and he was a "stranger" to her. He had not contacted her as she was growing up. E.A. testified her godmother remained in

touch with mother, always had mother's phone numbers, and father remained in touch with the godmother, so he could have gotten in touch with E.A. if he had wanted to. E.A. had only spoken with father four times over the course of the dependency.

E.A. could not sleep or concentrate at school because she was so worried about being placed with father, and she was having nightmares. She did not enjoy speaking with father. He told her she was "mean" after she refused to give him a kiss over the phone. E.A. did not want to be separated from her siblings. E.A. was very bonded to her caregivers and their children. She wanted to stay with them.

E.A.'s foster mother was willing to adopt E.A. and T.P., and to facilitate visitation between all of the siblings. She testified E.A. is closely bonded with her sister, T.P.

Department social worker Elizabeth Leon testified she monitored many of the family's visits. She also testified E.A. is very bonded to her little sister, with whom she is placed. She believed it would be harmful for them to be separated. It would also be harmful for E.A. to be separated from L.A.

Ms. Leon testified that she spoke with father about conjoint counseling, "but he never wanted to commit to any sort of schedule, because . . . he works construction and sometimes . . . they have big jobs, so he doesn't know if he would be available." She also tried to establish a schedule for telephone visitation, but father was reluctant to commit to a schedule because of his work obligations. She eventually established a schedule, but father did not follow it. Father only called the children a few times, although Ms. Leon had told father it was important to have regular phone contact with the children. During all of Ms. Leon's conversations with father, he never once asked if E.A. had any special needs. She last spoke with father four months earlier, in October 2018.

7

Ms. Leon was concerned about E.A.'s emotional well-being if she were to be placed with father, as E.A. did not have a relationship with him. Ms. Leon believed E.A. should remain in her current placement.

Father testified that L.A. was three and E.A. was four when he was deported. He went to federal prison in 2011, served two years, and then was deported in 2013. Father spoke with the children three or four times while he was in prison. He did not speak with them again until 2018.

Father testified he did not call the children more often during the dependency because he was working in areas with poor phone reception. He was uncomfortable speaking with E.A. and L.A. because they would only say a few words and then hang up.

Father testified he called the children three times in the past year. He only spoke with E.A. once. Social workers discussed therapy with father, but he declined it because he did not think it would work.

Father never contacted any agencies prior to this dependency for help in contacting his children. Father did not know if E.A. had any special education needs. He never attempted to write to her following his deportation.

During closing argument, father did not contend the Department failed to provide him reasonable services. He argued E.A. should be placed with him because he was nonoffending. He contended he was prevented from bonding with E.A. because of his deportation, and by mother.

The court concluded father had no bond with E.A. and had made little effort to establish a relationship. Father never sent any letters or cards, even though he was in contact with a mutual family friend who could have facilitated communication. The court also expressed concern that E.A. has special education needs that

8

father knew nothing about, and that E.A. did not want to be placed with father. The court found clear and convincing evidence that placement with father would be detrimental to E.A. The court terminated father's reunification services, and set a selection and implementation hearing. The court also found the Department had complied with the case plan and made reasonable efforts to return E.A. to parental custody. The court directed the Department to mail a writ advisement to father. However, the advisement was sent to the wrong address.

At the September 26, 2019 section 366.26 hearing, the court found it would be detrimental to return the children to their parents and terminated parental rights to E.A. and the younger children. The hearing for L.A. was continued to explore guardianship. These timely appeals followed.

<strong>DISCUSSION</strong>

1. **Father's Appeal from Orders Made at the Review Hearing**

   a. **Detriment finding**

   Father contends the court's detriment finding is not supported by substantial evidence. He contends the court was required to find detriment by clear and convincing evidence under section 361.2, and that parental absence from a child's life, without more, will not support a detriment finding.

   When the juvenile court removes a child from parental custody at the dispositional hearing, it must first determine whether there is a noncustodial parent who desires to assume custody of the child pursuant to section 361.2, subdivision (a). In this case, father did not seek custody of E.A. at the dispositional hearing, and he agreed E.A. could be removed from his custody. The parties agreed to hold any section 361.2 detriment finding in abeyance until more information could be gathered about father.

9

On appeal of a detriment finding, we review the record in the light most favorable to the order to determine if there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the child would suffer detriment. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.)

Father claims E.A.'s wishes, and his lack of a relationship with E.A., are not sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a). But father minimizes the evidence of detriment. Father's concern that his work schedule prevented him from committing to a telephone visitation schedule, and his plan to leave his daughter mostly in the care of his mother and sister (whom, we presume, E.A. had never met), do not suggest an earnest desire on his part to care for and nurture E.A. Telling E.A. in a few phone calls that he loved her, without acknowledging her discomfort with him and desire to stay in her placement, and without genuinely trying to build a relationship with her, is not enough to support father's claim of error.

Father relies on *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1256-1257 (a child's preference is not the deciding factor in a placement decision) and *In re John M.* (2006) 141 Cal.App.4th 1564, 1569 (lack of a relationship with noncustodial parent does not establish detriment). These cases are distinguishable. The father in *In re John M.* had resumed contact with his child a year before the dependency proceeding, the lack of contact was not the father's fault, there was scant evidence of a sibling bond, and there was no evidence the father could not meet the child's special needs. (*In re John M.,* at pp. 1568, 1569.) In *In re Patrick S.*, the father was separated from his son through no fault of his own, and tirelessly searched for him, hiring an attorney and private investigator, contacting child welfare agencies and law enforcement. He had

10

paid child support for 11 years and covered his child under his medical insurance. (*In re Patrick S.,* at pp. 1256-1257.)

In contrast, father made minimal efforts to contact E.A. following his deportation. Although he blamed mother for changing her phone numbers, he was in contact with other family friends to whom he could have sent letters, money, or gifts. He never enlisted the help of any agencies, despite knowing that mother hit the children and abused substances and the children had been dependents of the court before this proceeding. Even after these dependency proceedings commenced, father called E.A. only a few times, because he was uncomfortable talking to her. E.A. suffered extreme anxiety and distress about the risk the court would order her to live with father. She was closely bonded with her siblings, and she had special education needs which father knew nothing about.

On this record, substantial evidence supports the juvenile court's detriment finding.

### b. Reasonable services

Father also contends substantial evidence does not support the juvenile court's finding that the Department provided him with reasonable reunification services. This argument tries to shift the blame to mother, who father says prevented him talking to E.A. for seven years before the dependency proceedings; to E.A., who father felt uncomfortable speaking with by phone; to the social worker, who father criticizes for not helping him find a therapist or set up Skype for him; to the court, which father complains did not *require* Skype conjoint counseling; and back to the social worker, who father claims did not tell him he was required to engage in conjoint counseling. He argues inferences from the social worker's reports and testimony that are not reasonable and, while acknowledging the standard of review, he highlights only the evidence that seems favorable from his perspective.

11

Father was offered conjoint counseling and a visitation schedule on multiple occasions, but he declined to avail himself of these services based on concerns about his availability due to his work schedule. Substantial evidence supports the juvenile court's reasonable services finding.

## 2. Father's Appeal from Termination of Parental Rights

Lastly, father contends substantial evidence does not support the juvenile court's order terminating his parental rights. However, he acknowledges, as he must, that a detriment finding is sufficient to terminate a nonoffending, noncustodial parent's rights. (*In re T.G.* (2013) 215 Cal.App.4th 1, 20 [a court may not terminate a nonoffending, noncustodial mother's or presumed father's parental rights without finding, by clear and convincing evidence, that awarding custody to the parent would be detrimental].) As discussed *ante*, substantial evidence supports the court's detriment finding.

## 3. Mother's Appeal

After examination of the record, mother's appointed counsel was unable to identify any arguable issues and so informed this court. Appointed counsel advised mother that she may personally submit any contentions she feels the court should consider and further that the appeal would be dismissed in the absence of arguable issues. Mother did not present any issues for the court's consideration. Accordingly, mother's appeal must be dismissed. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 838.)

Since mother filed a *Phoenix H.* brief and did not present any issues to the court for further consideration, the motion filed March 9, 2020, is hereby stricken.

12

## DISPOSITION

The orders are affirmed, and mother's appeal is dismissed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.